**Reversed and Remanded and Memorandum Opinion filed October 14, 2014**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00143-CV

**DENNIS ZAPOROZHETS AND DVZ & ASSOCIATES, INC., Appellants**

**V.**

**COURT APPOINTED RECEIVER IN CAUSE NO. 12-DCV-199496, Appellee**

**On Appeal from the 434th Judicial District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 13-DCV-208875**

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, Dennis Zaporozhets and DVZ & Associates, Inc. challenge the trial court's order denying their motion to compel arbitration of claims brought by the court appointed receiver in Cause No. 12-DCV-199496, and to abate the case pending arbitration. We reverse and remand.

BACKGROUND

Zaporozhets is a director of DVZ. Zaporozhets and DVZ provided accounting, consulting, and financial services to Lindinger Services, Inc. and Lindinger Inspection Engineers, Inc. (collectively, "Lindinger") from November 2009 until June 2012.[1] Charles Gerhardt was appointed as receiver for Lindinger in a separate proceeding on July 24, 2012, and is referred to in this opinion as "the Receiver."

DVZ and Lindinger entered into a "Standard Engagement Letter" in November 2009.[2] The letter was written on DVZ letterhead and signed by Zaporozhets in a signature block that states: "Agreed to and acknowledged for DVZ by." The letter states that DVZ will prepare Lindinger's 2009 corporate tax filings; prepare 2009 individual tax filings for Lindinger's executives; make 2009 adjustments to Lindinger's books for tax compliance purposes; prepare 2009 financial plans for Lindinger's executives; review Lindinger's qualified and nonqualified retirement plans; and review Lindinger's activities and transactions annually for tax and financial planning purposes. The 2009 letter specifies a dispute resolution procedure:

> If any dispute, controversy or claim arises in connection with the performance or breach of this agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process)[,] then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of Texas and the then current Arbitration Rules for Professional Accounting and Related Disputes

---

[1] The parties do no distinguish between Lindinger Services, Inc. and Lindinger Inspection Engineers, Inc. in their briefs; the parties refer collectively to the two entities as "Lindinger." We do the same.

[2] The letter states that it confirms the terms of the engagement between DVZ and the "Lindinger Inspection Companies." The Receiver does not dispute that the 2009 letter binds Lindinger Services, Inc. and Lindinger Inspection Engineers, Inc.

of the American Arbitration Association . . . .

DVZ and Lindinger entered into a second engagement letter on DVZ letterhead in August 2011. Zaporozhets signed it as "Dennis Zaporozhets, CPA." The 2011 letter states that DVZ will prepare income and franchise tax returns for Lindinger covering 2007 to 2010, and 2010 income tax returns for Lindinger executives Peter and Monica Townley. The 2011 letter does not reference the 2009 letter and does not contain an arbitration provision.

The Receiver sued Zaporozhets and DVZ on behalf of Lindinger in August 2013. The Receiver also sued DVZ & Associates, CPA, PC, which did not move to compel arbitration and is not a party to this appeal.

The Receiver alleged that Zaporozhets falsely held himself out as a certified public accountant and failed to disclose whether he acted as an agent of DVZ or DVZ & Associates, CPA, PC. The Receiver also alleged that Zaporozhets violated the rules of professional accounting conduct by failing to return working papers to Lindinger upon termination of services; holding conflicting interests; and disclosing confidential information. The Receiver asserted a claim for breach of fiduciary duty against Zaporozhets and DVZ for allegedly disclosing confidential information and holding conflicting interests. The Receiver further alleged that Zaporozhets and DVZ acted negligently in performing accounting, financial, and consulting services for Lindinger. According to the Receiver, Zaporozhets and DVZ failed to make tax deposits, failed to prepare financial statements on behalf of Lindinger, gave incorrect accounting and financial advice, gave unreasonable operational and accounting advice, made false statements about Lindinger's ownership, and misstated Peter and Monica Townley's duties to Lindinger.

Zaporozhets and DVZ filed a motion to compel arbitration and to abate the

3

Receiver's claims pending arbitration. The trial court held a non-evidentiary hearing and denied the motion on December 16, 2013. The parties did not request findings of fact or conclusions of law, and the trial court did not issue any. Zaporozhets and DVZ timely filed a notice of appeal on January 31, 2014.[3]

## ANALYSIS

In a single issue, Zaporozhets and DVZ challenge the trial court's denial of their motion to compel arbitration and abate the case against them pending arbitration. Zaporozhets and DVZ argue that the arbitration provision in the 2009 letter mandates arbitration of all claims asserted against them. The Receiver contends that the 2009 letter has been extinguished and replaced by the 2011 letter through novation. The Receiver further argues that Zaporozhets' and DVZ's claims do not fall within the scope of the 2009 letter's arbitration provision.[4]

## I. Application of the Texas General Arbitration Act

The 2009 letter is silent about whether the Federal Arbitration Act ("FAA") or Texas General Arbitration Act ("TGAA") governs the letter's arbitration provision. *See* 9 U.S.C.A. §§ 1-16 (West 2009); Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001-.098 (Vernon 2011). The trial court did not determine which statute applies; no party asserts that one act applies to the exclusion of the other, or

---

[3] In compliance with Texas Rule of Civil Procedure 306a(5) and Texas Rule of Appellate Procedure 4.2, Zaporozhets and DVZ established that they did not receive notice of the December 16, 2013 order until January 28, 2014. Zaporozhets and DVZ timely filed their notice of appeal within 20 days of the date on which they received actual notice of the order. *See* Tex. R. App. P. 26.1(b).

[4] The Receiver argued to the trial court, but does not argue on appeal, that the 2009 letter is the product of fraud and is unenforceable. A contention that the entire contract (as opposed to the arbitration clause itself) resulted from fraudulent inducement does not foreclose arbitration. *See In re Educ. Mgmt. Corp.*, 14 S.W.3d 418, 425 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("Fraud in the inducement of an arbitration provision is a matter for the trial court whereas fraud in the inducement of an entire agreement is a matter for the arbitrator."). In any event, the Receiver states in his brief that he did not provide evidence of fraud to the trial court.

4

that the FAA preempts any aspect of the TGAA relevant to this case.

When an arbitration agreement is silent about which act applies and neither party asserts the FAA applies or preempts the TGAA, we need not address whether the FAA applies. *See Branch Law Firm, L.L.P. v. Osborn*, No. 14-13-00820-CV, 2014 WL 4199206, at *4 n.10 (Tex. App.—Houston [14th Dist.] Aug. 26, 2014, no pet. h.); *Osornia v. AmeriMex Motor & Controls, Inc.*, 367 S.W.3d 707, 711 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The FAA and TGAA address the same underlying substantive principles. *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 n.10 (Tex. 2008) (noting the similarities of the acts and relying interchangeably on cases discussing the FAA and TGAA). We proceed with our analysis under the TGAA. *See Branch Law Firm, L.L.P.*, 2014 WL 4199206, at *4 n.10. Because the substantive principles applicable to our analysis are the same under either act, we cite cases decided under the FAA and TGAA interchangeably. *See Forest Oil Corp.*, 268 S.W.3d at 56 n.10; *Branch Law Firm, L.L.P.*, 2014 WL 4199206, at *4 n.10. An order denying a motion to compel arbitration under the TGAA is immediately appealable. Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1); *see CMH Homes v. Perez*, 340 S.W.3d 444, 448 (Tex. 2011).[5]

## II.   Motion to Compel Arbitration

### A.   Standard of Review and Applicable Law

A trial court's denial of a motion to compel arbitration is reviewed for abuse of discretion. *Branch Law Firm, L.L.P.*, 2014 WL 4199206, at *5. We defer to a trial court's factual determinations if supported by evidence, but review a trial

---

[5] After a 2009 amendment to the Texas Civil Practice and Remedies Code, Texas appellate courts also may consider interlocutory appeals of orders denying motions to compel arbitration under the FAA. Act of May 27, 2009, 81st Leg., R.S., ch. 820, §§ 1, 3, 2009 Tex. Gen. Laws 2061 (codified at Tex. Civ. Prac. & Rem. Code § 51.016 (Vernon Supp. 2014)); *see also CMH Homes*, 340 S.W.3d at 448.

5

court's legal determinations *de novo*. *In re Labatt Food Serv., L.P.,* 279 S.W.3d 640, 643 (Tex. 2009).

A party seeking to compel arbitration must establish that (1) a valid arbitration agreement exists, and (2) the claims at issue are within the scope of the agreement. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011). If the relevant parties did not sign the contract in which the arbitration agreement is found, addressing the first prong includes analysis of whether a non-signatory is bound by or can enforce the arbitration agreement. *See id.* at 223-24; *Osornia*, 367 S.W.3d at 711.

Arbitration cannot be ordered in the absence of an agreement to arbitrate. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994); *In re Estate of Guerrero*, No. 14-13-00580-CV, 2014 WL 4377465, at *3 (Tex. App.—Houston [14th Dist.] Sept. 4, 2014, no pet.). Arbitration is favored under public policy, but it also is a creature of contract. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). In deciding whether the parties have agreed to arbitrate, we do not resolve doubts or indulge a presumption in favor of arbitration. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). Instead, through the neutral application of state contract law, we decide whether an enforceable agreement exists in the first instance and whether generally applicable contract defenses may be applied to invalidate the arbitration agreement. *See In re Poly-Am., L.P.*, 262 S.W.3d at 348.

Once an arbitration agreement is found to exist, doubts regarding an agreement's scope are resolved in favor of arbitration because there is a strong presumption favoring agreements to arbitrate. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737. This policy favoring arbitration is so compelling that a court should not deny arbitration "unless it can be said with positive assurance that an

6

arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (internal quotation marks and emphasis omitted). In determining whether a claim falls within the scope of an arbitration agreement, we focus on the factual allegations of the complaint rather than the legal causes of action asserted. *See id.* at 900.

## B. Agreement to Arbitrate

A party seeking to compel arbitration first must establish the existence of a valid agreement to arbitrate. *See In re Rubiola*, 334 S.W.3d at 223. Zaporozhets and DVZ argue that the arbitration provision in the 2009 letter is a valid agreement to arbitrate. The Receiver does not challenge the 2009 letter's validity. Instead, he argues that the trial court made an implied factual finding that the parties intended the 2011 letter (which contains no arbitration provision) to be a novation of the 2009 letter.

### 1. The record does not establish novation as a matter of law

Novation is the substitution of a new agreement between the same parties or the substitution of a new party with respect to an existing agreement. *New York Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 214 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). When a novation occurs, only the new agreement can be enforced. *Id.* The party raising a novation defense must establish (1) the existence of a previous, valid obligation; (2) a mutual agreement of the parties to a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract. *Id.* A court can infer that a new contract is a novation of a previous contract if the two contracts are so inconsistent with one another that they cannot subsist together. *Farkooshi v. Afisco Interest, LLC*, No. 14-13-00201-CV, 2014 WL 4161708, at *4 (Tex. App.—Houston [14th Dist.] Aug. 21, 2014, no pet. h.)

(mem. op.). Absent such an inconsistency, "[A] second contract will operate as a novation of a first contract only when the parties to both contracts intend and agree that the obligations of the second shall be substituted for and operate as a discharge of the obligations of the first." *Chastain v. Cooper & Reed*, 152 Tex. 322, 325, 257 S.W.2d 422, 424 (1953); *see also Farkooshi*, 2014 WL 4161708, at *4. Ultimately, whether a new contract operates as a novation is a question of intent. *Securitycomm Grp., Inc. v. Brocail*, No. 14-09-00295-CV, 2010 WL 5514333, at *16 (Tex. App.—Houston [14th Dist.] Dec. 28, 2010, pet. denied) (mem. op.). Novation is never presumed; intent must be clear from the evidence. *Id.*

The Receiver argues that the 2011 letter is a novation of the 2009 letter because the terms of the two letters are so inconsistent that they cannot subsist together. *See Farkooshi*, 2014 WL 4161708, at *4. The Receiver further asserts that the 2009 letter is ambiguous. He proposes a reading of the 2009 letter limiting its scope to 2009 tax preparation; from this premise, he argues that a conflict exists because the 2011 letter also encompasses 2009 tax preparation. The Receiver argues that the parties intended to extinguish the 2009 letter and replace it with the 2011 letter because the terms regarding 2009 tax preparation are inconsistent between the two letters. For their part, Zaporozhets and DVZ argue that there is no inconsistency between the two letters because the 2011 letter merely supplemented — but did not replace — the 2009 letter by including additional tax years beyond 2009 to the scope of services to be provided.

a. **The unambiguous 2009 letter is not limited to 2009 tax preparation**

Whether a contract is ambiguous is a question of law. *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). When construing a contract, we must ascertain the parties' true intentions as expressed in the writing itself. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). In

8

identifying intent, we must consider the entire writing in an effort to harmonize and give effect to all the provisions so that none will be rendered meaningless. *See id.* We construe contracts "from a utilitarian standpoint bearing in mind the particular business activity sought to be served. *See Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005). We "avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive." *Id.*

The 2009 letter contains a section called "Scope of Professional Services Provided." Under this section, four boxes are checked: tax compliance, tax planning, financial planning, and "other." An addendum to the letter further delineates the services to be provided. The addendum states:

> DVZ will provide the following professional services to Lindinger Inspection Companies (the "Client") under the terms of this engagement letter:
>
> a)　　For calendar year 2009, prepare corporate federal and state tax filings (excluding payroll and property tax related filings);
>
> b)　　For calendar year 2009, prepare individual federal and state tax filings (excluding payroll and property tax related filings) for each officer and executive of the Client;
>
> c)　　For calendar year 2009, make adjustments and corrections to Client's books as necessary for tax compliance purposes;
>
> d)　　For calendar year 2009, prepare a comprehensive financial plan for each executive identified by the Client in compliance with rules and standards established by the Certified Financial Planner Board of Standards;
>
> e)　　Review the Client's current qualified and nonqualified

9

retirement plan(s) and provide recommendations with respect to same;

    f)     Periodically, but in no event less than annually, review the Client's activities and transactions for tax and financial planning purposes with the intent to minimize the Client's tax liabilities both domestically and abroad while maximizing economic profits.

The addendum lists the following schedule of charges:

Fees will be charged based on actual time incurred at $75.00 to $295.00 per hour (based on staff member providing services) plus out-of-pocket expenses.  Our estimated fees for calendar year 2009 are detailed as follows:

    a)     Corporate federal and state filings — based on actual hours with a minimum fee of $1,200.00

    b)     Individual federal and state filings — based on actual hours with a minimum fee of $350.00

    c)     Comprehensive financial plan — discounted flat fee of $950.00
. . .

    d)     Tax planning — based on actual hours at $295.00 per hour

    e)     Business planning — based on actual hours at $295.00 per hour

    f)     Personal financial planning — included in comprehensive financial plan

    g)     Asset management — 1.5% of assets under management for accounts up to $500,000.  1.0% of assets under management for accounts above $500,000.

The 2009 letter contains a heading titled "Professional Services Not Provided." Under that heading, the letter states: "DVZ will not provide audit, review, compilation, fraud detection as well as the following professional services and they are specifically excluded from this engagement[.]" The space following this sentence is blank.

The Receiver argues that the scope of services provided under the 2009 letter is ambiguous because the 2009 letter contains the following clause under the heading "Professional Fees:"

> [DVZ's] firm policies require us to collect a retained fee equal to 100% of our estimated fees for professional services to be rendered during this engagement prior to commencing any work. All fees will be billed against this retainer and you may be asked to replenish it when accrued fees exceed the retainer balance.

The 2009 letter indicates elsewhere that Lindinger paid retained fees of $1,500. The Receiver argues that the scope of services provided under the 2009 letter therefore is limited to work for which fees totaled $1,500 because Lindinger only paid retained fees of $1,500, and because DVZ has a firm policy of collecting fees equal to 100 percent of estimated fees prior to commencing work. The Receiver argues that the scope of the 2009 letter is limited to 2009 corporate federal and state tax filings and 2009 individual federal and state tax filings because these services together cost $1,550.[6]

We reject this construction of the scope of services provided under the 2009 letter. When construing a contract, we aim to ascertain the true intentions of the parties as expressed in the writing itself. *See Italian Cowboy Partners, Ltd.*, 341

---

[6] The Receiver adds the costs for these services as stated in the addendum. The cost for corporate federal and state tax filings is $1,200; the cost for individual federal and state tax filings is $350. The Receiver does not explain why, under his interpretation, DVZ did not collect the full cost for these services, which total $1,550.

11

S.W.3d at 333. The 2009 letter contains headings titled "Scope of Professional Services Provided" and "Professional Services Not Provided." The addendum further specifies the services DVZ will provide and their cost. The addendum lists continuing, annual services, and the retainer provision contemplates replenishment of the retainer upon depletion. The Receiver's argument for a restriction to the scope of services provided impermissibly renders meaningless the enumeration of services under the heading "Scope of Professional Services Provided" and in the addendum. *See id.* (in identifying intent, a court must consider the entire writing in an effort to harmonize and give effect to all contract provisions). We hold that the 2009 letter is not ambiguous, and that the scope of services provided under the 2009 letter includes those services enumerated in the addendum; this construction is reasonable and gives effect to all contract provisions. *See id*; *see also Frost Nat'l Bank*, 165 S.W.3d at 312 (a court may construe an unambiguous contract as a matter of law).

### b. The 2009 letter can subsist together with the 2011 letter

The scope of services provided under the 2009 letter includes preparation of 2009 corporate and individual tax filings; 2009 adjustments to Lindinger's books for tax compliance purposes; preparation of 2009 financial plans for Lindinger's executives; review of Lindinger's qualified and nonqualified retirement plans; and annual review of Lindinger's activities and transactions for tax and financial planning purposes. The scope of services provided under the 2011 letter is limited to preparation of tax returns for Lindinger covering 2007 to 2010, and 2010 tax returns for Peter and Monica Townley.

The 2011 letter contains a different costs structure than the 2009 letter with respect to tax preparation. The 2011 letter states that corporate tax filings cost $2,500 per year, while the 2009 letter states a minimum fee of $1,200.

12

Additionally, the 2011 letter states different terms regarding staffing, billing, use of client documents, termination of the engagement, and choice of law.

The letters are not inconsistent with respect to non-tax preparation services. The 2011 letter focuses exclusively on tax preparation services; it does not address 2009 adjustments to Lindinger's books, preparation of 2009 financial plans for Lindinger's executives, review of Lindinger's qualified and nonqualified retirement plans, and annual review of Lindinger's activities and transactions for tax and financial planning purposes. Additionally, the 2011 letter does not reference the 2009 letter.

Although the 2009 and 2011 letters are arguably inconsistent regarding 2009 tax preparation services, they are not so inconsistent that we can infer novation. The 2011 letter is silent regarding all services listed in the 2009 letter other than 2009 tax preparation. Moreover, the 2011 letter did not explicitly terminate any services in the 2009 letter, including DVZ's annual tax and financial planning service. We can infer only that the 2011 letter supplanted those terms in the 2009 letter pertaining to 2009 tax preparation; the 2011 letter's silence regarding other services in the 2009 letter does not suggest that the 2011 letter had any effect on other services. *See CTTI Priesmeyer, Inc. v. K & O Ltd. P'ship*, 164 S.W.3d 675, 682 (Tex. App.—Austin 2005, no pet.) (repair contract was not a novation of original construction contract because there was no express language of novation in the repair contract and the repair contract varied from the original contract only to the extent necessary for repairs); *cf. New York Party Shuttle, LLC*, 414 S.W.3d at 214 (the party asserting novation must prove the extinguishment and replacement of a prior contract).

Novation is a question of intent, which must be clearly set forth and cannot be presumed. *See Securitycomm Grp., Inc.*, 2010 WL 5514333, at *16. While

13

intent can be inferred from inconsistencies between contracts, the contracts must be so inconsistent that they cannot subsist together. *See Farkooshi*, 2014 WL 4161708, at \*4. We cannot infer from the letters alone that asserted inconsistencies between the letters establish the parties' intent that the 2011 letter would serve as a novation of the 2009 letter. *See Priesmeyer, Inc.*, 164 S.W.3d at 682. The Receiver did not submit additional evidence of novation. Therefore, we hold that the record does not establish novation as a matter of law. *See Farkooshi*, 2014 WL 4161708, at \*4; *Securitycomm Grp., Inc.*, 2010 WL 5514333, at \*16.

### c.      No fact dispute exists on this record

The Receiver did not contest the authenticity or admissibility of the 2009 or 2011 letters. He did not file evidence in the trial court.[7] On appeal, he does not assert that he adduced evidence in the trial court bearing on the motion to compel arbitration. The trial court's docket sheet indicates that only counsel for the parties appeared. Zaporozhets and DVZ assert that the trial court held a non-evidentiary hearing. The Receiver nevertheless argues that we must presume evidence supporting the trial court's denial of the motion to compel arbitration was presented at the hearing because Zaporozhets and DVZ did not file a reporter's record with their appeal.

A reporter's record is required on appeal if evidence is introduced in open court. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 782 (Tex. 2005). Allegations on appeal that a hearing was evidentiary must be specific. *See Id.* at 783. ("[T]here must be a specific indication that exhibits or testimony was presented in open court *beyond* that filed with the clerk.") (emphasis

---

[7] The only evidence of intent was Zaporozhets' affidavit filed as part of Zaporozhets' and DVZ's reply in support of their motion to compel arbitration. The affidavit states that neither Zaporozhets nor DVZ intended for the 2011 letter to modify, change, or impact the arbitration provision in the 2009 letter.

in the original).

The Receiver does not assert that the hearing on the motion to compel arbitration was evidentiary. He does not indicate what, if any, evidence was adduced at the hearing. Zaporozhets and DVZ deny the hearing was evidentiary, and the trial court's docket sheet suggests that the parties presented only legal argument. We determine that the hearing was non-evidentiary because the Receiver has not specifically indicated that exhibits or testimony were presented in open court. *See id.* at 783. Accordingly, we consider this appeal on the clerk's record alone and do not presume that evidence supporting the trial court's decision was adduced at the hearing. *See id.* at 782; *cf. W & F Transp., Inc. v. Wilhelm*, 208 S.W.3d 32, 36 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("We are not aware of any cases . . . applying the common law presumption [that omitted portions of the reporter's record are both relevant to and support the judgment on appeal], when the only omission from the record is nonevidentiary.").

This case presents only legal issues. No fact dispute exists because (1) the Receiver did not contest Zaporozhets' and DVZ's proof; (2) the Receiver did not file his own controverting evidence; and (3) the trial court did not hold an evidentiary hearing. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) ("A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced."); *cf. J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 231-233 (Tex. 2003) (the trial court did not make factual findings where it did not hold an evidentiary hearing on a motion to compel arbitration). We determine, as a matter of law, that the record does not establish that the 2011 letter is a novation of the 2009 letter. This record provides no basis for an implied fact-finding to the contrary. DVZ, as a signatory of the 2009 letter, can enforce the arbitration provision contained in the 2009 letter.

15

*See In re Rubiola*, 334 S.W.3d at 224.

### 2. The Receiver does not dispute Zaporozhets' ability to enforce the 2009 letter's arbitration provision

Zaporozhets is a director of DVZ, who signed the 2009 letter on behalf of DVZ. Arbitration clauses do not automatically cover all corporate agents or affiliates. *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 210 (Tex. 2007) (orig. proceeding). However, where liability arises from and must be determined by reference to a contract containing an arbitration provision, rather than general obligations imposed by law, an agent of a contracting party may enforce the arbitration provision in the contract against a signatory. *See In re H & R Block Fin. Advisors, Inc.*, 235 S.W.3d 177, 178 (Tex. 2007) (orig. proceeding). The Receiver did not challenge Zaporozhets' ability to enforce the arbitration provision individually in the trial court and does not do so on appeal. Therefore, we conclude that Zaporozhets also can enforce the arbitration provision as to claims asserted against him individually.

### C. Scope

The 2009 letter contains a valid arbitration agreement, which Zaporozhets and DVZ both may enforce; however, arbitration is warranted only if the claims at issue fall within the arbitration agreement's scope. *In re Rubiola*, 334 S.W.3d at 223.

The Receiver argues that the scope of services provided under the 2009 letter and the arbitration provision itself are narrow. Because each is narrow, the Receiver asserts, his claims for false representation, breach of fiduciary duty, negligence, and violations of the rules of professional accounting conduct fall outside the arbitration provision's scope.

The scope of services provided under the 2009 letter is not narrow. As

discussed above, the services include preparation of 2009 corporate and individual tax filings, 2009 adjustments to the Lindinger's books for tax compliance purposes, preparation of 2009 financial plans for Lindinger executives, review of Lindinger's qualified and nonqualified retirement plans, and periodic review of Lindinger's activities and transactions for tax and financial planning purposes.

The scope of the 2009 letter's arbitration provision also is not narrow; as a matter of law, it is broad. An arbitration clause is broad where it provides for arbitration of "any dispute arising between the parties," "any controversy or claim arising out of or relating to the contract thereof," or "any controversy concerning the interpretation, performance or application of the contract." *Osornia*, 367 S.W.3d at 712; *see also Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 78 (Tex. App.—Texarkana 2014, no pet.) ("Arbitration clauses in which the scope is defined using 'relating to' and similar wide-reaching phrases are interpreted broadly.") (citing *In re Guggenheim Corp. Funding, LLC*, 380 S.W.3d 879, 887 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) (per curiam)). The 2009 letter requires "any dispute, controversy or claim aris[ing] in connection with the performance or breach of this agreement" to be arbitrated. This is a broad provision. *See Glassell Producing Co.*, 422 S.W.3d at 78 (clause requiring arbitration of claims "relating to or in connection with" agreement was broad); *cf. My Cafe-CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 866 (Tex. App.—Dallas 2003, no pet.) (fraudulent inducement claim fell within the scope of forum selection clause that applied to "'[a]ny dispute arising under or in connection with'" agreement and "'any claim affecting its validity, construction, effect, performance or termination'").

Where an arbitration clause is broad, an allegation is within the scope of the arbitration provision if the allegation is covered by, touches upon, has a significant

17

relationship to, is inextricably enmeshed with, or is factually intertwined with the contract that contains the arbitration agreement. *Glassell Producing Co.*, 422 S.W.3d at 78; *see also Cotton Commercial USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 108 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *In re Helix Energy Solutions Grp., Inc.*, 303 S.W.3d 386, 397 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The Receiver's allegations have a significant relationship to the 2009 letter and must be arbitrated. *See In re H & R Block Fin. Advisors, Inc.*, 235 S.W.3d at 178 (compelling arbitration of claims of negligence, gross negligence, fraud, breach of fiduciary duty, and statutory violations where the defendant's duties towards the plaintiff arose from a contract containing a broad arbitration provision); *cf. Greenberg Traurig, LLP v. Nat'l Am. Ins. Co.*, No. 14-14-00047-CV, 2014 WL 4459114, at *4 (Tex. App.—Houston [14th Dist.] Sept. 11, 2014, no pet. h.) ("Although the relationship between parties may be fiduciary in character, their fiduciary duties extend only to dealings within the scope of the underlying relationship of the parties.").

The Receiver's claims against DVZ are based on DVZ's professional relationship with Lindinger, which arose out of the 2009 letter; therefore, the Receiver's claims against DVZ also have a significant relationship to the 2009 letter and must be arbitrated. *See Greenberg Traurig, LLP*, 2014 WL 4459114, at *6 (compelling arbitration of claims for negligence, legal malpractice, and breach of fiduciary duty because each claim was based on the defendant's legal representation of the plaintiff, which arose out of an agreement containing an arbitration provision).

## D. Conclusion

Because Zaporozhets and DVZ established that a valid arbitration agreement exists in the 2009 letter, and that the Receiver's claims are within the scope of the

18

agreement, the Receiver's claims against Zaporozhets and DVZ must be arbitrated. *See In re Rubiola*, 334 S.W.3d at 223. We sustain Zaporozhets' and DVZ's sole issue.

## III. Disposition on Remand

Both the FAA and TGAA require courts to stay litigation of issues subject to arbitration. 9 U.S.C.A. § 3; Tex. Civ. Prac. & Rem. Code Ann. § 171.025(a). However, if nonarbitrable issues are severable, they may proceed. Tex. Civ. Prac. & Rem. Code Ann. § 171.025(b); *cf. In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 195 (Tex. 2007) (orig. proceeding) (when an issue is pending in both arbitration and litigation, the FAA generally requires arbitration to go forward first).

The Receiver sued DVZ & Associates, CPA, PC on behalf of Lindinger for breach of fiduciary duty and negligence. DVZ & Associates, CPA, PC is not a signatory to the 2009 letter and did not move to compel arbitration.[8] DVZ & Associates, CPA, PC is not a party to this appeal. Because the parties have not addressed whether the Receiver's claims against DVZ & Associates, CPA, PC are severable and, if severable, whether they should be stayed, we leave to the trial court to determine on remand whether the Receiver's claims against DVZ & Associates, CPA, PC should be stayed pending arbitration. *See Forest Oil Corp.,* 268 S.W.3d at 61-62 (ordering proceedings in the trial court stayed as to the

---

[8] The 2009 letter states:

[DVZ] may, at our sole discretion, retain the services of another firm or independent subcontractor ("Subcontractor") to complete all or a portion of this engagement. Such other firm(s) may include, but are not limited to DVZ & Associates, CPA, P.C., a New York Professional Corporation. These subcontracting engagements will be governed by a contract between DVZ & Associates, Inc. and the relevant Subcontractor and are outside the scope of this engagement letter. The Client who is a party to this engagement letter will not be a party to the contract between DVZ & Associates, Inc. and its Subcontractor(s).

arbitrable claims, and remanding for a determination whether the nonarbitrable claims also should be stayed).

## CONCLUSION

We reverse the trial court's order denying Zaporozhets' and DVZ's motion to compel arbitration and to abate judicial proceedings pending arbitration. We remand the case for proceedings consistent with this opinion.


/s/    William J. Boyce
             Justice


Panel consists of Justices Boyce, Jamison, and Donovan.