**Affirmed and Opinion filed March 29, 2012.**



In The

# Fourteenth Court of Appeals

———————————

## NO. 14-11-00086-CV

———————————

**FERNANDO OSORNIA, Appellant**

**V.**

**AMERIMEX MOTORS & CONTROLS, INC., Appellee**

---

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-53966**

---

## OPINION

This is an interlocutory appeal from the trial court's order denying a defendant's application to compel arbitration under Texas Civil Practice and Remedies Code section 171.021. Because the claims asserted against the defendant by the plaintiff do not fall within the scope of the arbitration agreement, the trial court did not err in refusing to compel arbitration, and we affirm the trial court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2008, appellee/plaintiff AmeriMex Motor & Controls, Inc. and others filed suit against appellant/defendant Fernando Osornia and others in Cause No. 2008-56215 in the 152nd District Court of Harris County (hereinafter the "First Lawsuit"). In late October and early November of 2009, the parties to that lawsuit and other "Potential Parties" entered into a "Mutual Release and Settlement Agreement" (hereinafter "Settlement Agreement"). The parties to that agreement agreed that "any and all claims arising out of this Agreement . . . shall be arbitrated." Viking Offshore (USA), Inc. was not a party in the First Lawsuit, nor was Viking a party to the Settlement Agreement, which contains no reference to Viking.

AmeriMex alleges that in June 2010, Viking assigned to AmeriMex any and all claims that Viking had against Osornia and Daniel Becker (the "Assigned Claims"). In August 2010, AmeriMex filed suit in the trial court below against Osornia and Becker (hereinafter the "Second Lawsuit"), alleging, in pertinent part, as follows:

- In October 2006, Becker was a principal and officer of Odin Rig Services, Inc. Odin was working under a contract with Viking to do the project management on an upgrade of the "VIKING PRODUCER," a semi-submersible rig.

- During that same time period, Osornia was an officer and principal of AmeriMex. Becker was aware of Osornia's position with AmeriMex.

- Odin's only business was fulfilling the rig upgrade of the VIKING PRODUCER. Under the contract between Viking and Odin, Odin was responsible for managing this project.

- Viking gave Odin substantial discretion to determine what was necessary to complete the project.

- In October 2006, Becker was in charge of this project for Odin. Becker's major responsibilities were the acquisition of the capital drilling equipment for the vessel.

- It was Becker's responsibility to select the vendor from whom to buy the capital equipment to be installed on the VIKING PRODUCER. Viking's budget for the project was based upon Becker's recommendations.

2

- Becker needed to buy six mud pump motors and three "draw work motors" for installation on the VIKING PRODUCER.

- AmeriMex is in the business of manufacturing and selling motors that can be used for mud pumps and draw works on drilling rigs. Osornia and Becker conspired to cause AmeriMex to assume contractual risks for the nine motors by a series of maneuvers.

- First, contrary to proper commercial practices, Becker, rather than the vendor AmeriMex, prepared the quotation for the nine motors.

- Second, when Becker issued the quotation, Osornia and Becker caused the quotation to come from a Mexican company known as Motor Power Services S.A. de C.V. (hereinafter "Motor Power"). Motor Power was used as a vehicle for illegal activity that substantially damaged AmeriMex in other transactions.

- When Becker caused Odin to issue the purchase order for the motors, he identified the vendor as Motor Power. There was no commercial relationship between Motor Power and AmeriMex, other than Osornia's use of Motor Power as a vehicle to commit crimes and cheat AmeriMex out of funds properly due it.

- Becker was acting in the course and scope of his employment for Odin, which was in the course and scope of its employment for Viking. Becker knowingly participated in the fraudulent construction of the transaction.

- Becker has testified that he considered the vendor to be AmeriMex at all material times.

- AmeriMex procured or manufactured the motors for sale to Viking. When it was time to pay for the motors, Becker, on behalf of Odin, participated in a conspiracy with Osornia to deprive AmeriMex of receipt of its funds for the nine motors and to divert the funds to Motor Power.

- Becker authored an email dated December 23, 2006, in which he advised Osornia to lie to Odin about why payments were going to Motor Power. The lie that Becker concocted was for Osornia to claim that Motor Power was a subsidiary of AmeriMex. Motor Power has never been a subsidiary of AmeriMex, and Becker knew this statement was false when he made it.

- Becker continued on behalf of Odin, which, in turn, was acting on behalf of Viking, to take affirmative actions to cheat AmeriMex out of its money by rushing the checks through the normal pay process and making them payable to Motor Power.

- Motor Power's Alejandro Moeller actively conspired with Becker and Osornia to deprive AmeriMex of its funds.

3

- On January 8,[1] Becker caused Viking to pay Motor Power $130,500 for the draw works motors and $261,000 for the mud pump motors.

- Because of the conduct of Becker and Osornia, Viking did not receive the six mud pump motors for which it paid Motor Power.

- Becker has testified that he caused Viking to pay the wrong party.

- Osornia has testified that Motor Power paid him a "kickback" of $1,000 for each motor for which Motor Power received payment.

- For good and sufficient consideration, Viking assigned its claims against Becker and Osornia to AmeriMex.

Based upon these allegations and as assignee of Viking, AmeriMex has asserted claims against Osornia for fraud, violations of the Texas Theft Liability Act, and tortious interference with contractual relations. As assignee, AmeriMex also asserted claims against Becker for fraud and tortious interference with contractual relations. On its own behalf, AmeriMex asserted tort claims against Becker.

Osornia filed an application to compel arbitration, arguing that AmeriMex's claims against Osornia fall within the scope of the Settlement Agreement's arbitration clause. The trial court initially granted Osornia's application but later reconsidered that ruling and issued an order denying the application. The trial court denied Becker's motion to compel arbitration. Osornia filed this interlocutory appeal from the denial of his application to compel arbitration. Becker did not file an interlocutory appeal.

## II. ISSUES PRESENTED

Osornia presents two appellate issues. In his first issue, Osornia asserts that the trial court erred in denying his application to compel arbitration. In his second issue, Osornia asserts that the alleged assignment of claims by Viking to AmeriMex is void and unenforceable as against public policy.

---

[1] AmeriMex does not specify a year in this allegation.

### III. STANDARD OF REVIEW

It is undisputed that Osornia and AmeriMex entered into the Settlement Agreement, and no party has challenged the validity of that agreement or its arbitration clause. Whether this clause imposes a duty upon AmeriMex to arbitrate its claims against Osornia in the Second Lawsuit is a matter of contract interpretation and a question of law for the trial court. *See IKON Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 694 (Tex. App.—Houston [14th Dist.] 1999, no pet.). We review the trial court's legal determination in this regard under a de novo standard of review. *See id*.

### IV. ANALYSIS

**A. Did the trial court err in denying the application to compel arbitration?**

We first examine whether the trial court erred in denying Osornia's application to compel arbitration. The Settlement Agreement is silent as to whether its arbitration clause is governed by the Federal Arbitration Act ("Federal Act") or the Texas General Arbitration Act ("Texas Act"). Osornia asserts that the Texas Act applies, and AmeriMex does not contest this assertion. Neither party asserts that the Federal Act applies or that it preempts any aspect of the Texas Act relevant to this case. In this situation, we need not address whether the Federal Act applies, and we treat this case as one under the Texas Act. *See Bates v. MTH Homes-Texas, L.P.*, 177 S.W.3d 419, 421 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Even so, because the substantive principles applicable to the analysis in this appeal are the same under both the Federal Act and the Texas Act, we cite in this opinion cases under the Federal Act and Texas Act without stating under which statute the cases were decided. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56, n.10 (Tex. 2008).

A party seeking to compel arbitration must establish that (1) a valid arbitration agreement exists[2] and (2) the claims at issue are within the scope of the agreement. *See In*

---

[2] If all relevant parties did not sign the contract in which the arbitration agreement is found, this first prong

5

*re D. Wilson Const. Co.*, 196 S.W.3d 774, 780–81 (Tex. 2006) (orig. proceeding); *In re Igloo Prods. Corp.*, 238 S.W.3d 574, 577 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding [mand. denied]).  If these two showings are made, the burden shifts to the party opposing arbitration to present a valid defense to the agreement, and absent evidence supporting such a defense, the trial court must compel arbitration.  *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227–28 (Tex. 2003); *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002) (orig. proceeding); *In re Igloo Prods. Corp.*, 238 S.W.3d at 577.

It is undisputed that Osornia and AmeriMex signed and entered into the Settlement Agreement, and no party has challenged the validity of that agreement or its arbitration clause.  Nonetheless, AmeriMex argues that Osornia failed to establish the existence of an arbitration agreement.  AmeriMex notes that (1) AmeriMex only asserts claims against Osornia as assignee of Viking, (2) AmeriMex could have asserted the Assigned Claims in Viking's name; and (3) there is no evidence of any arbitration agreement between Osornia and Viking.  Still, AmeriMex chose to bring suit in its own name, and AmeriMex is asserting claims against Osornia, albeit as assignee of Viking.  In this context, we conclude that Osornia carried his burden of establishing the existence of a valid arbitration agreement between the relevant parties—AmeriMex and Osornia.

Given the existence of a valid agreement to arbitrate, the next issue is whether AmeriMex's claims against Osornia are within the scope of the Settlement Agreement's arbitration clause.  That clause reads in its entirety as follows:

> The Parties to this Agreement agree that any and all claims arising out of this Agreement, including any misrepresentations or warranties (including disputes and interpretations), shall be arbitrated before Judge Caroline Baker.  If she is unwilling or unable to serve as arbitrator, the Parties shall agree to an arbitrator who has served as a former State District Judge [sic] or,

---

may include issues as to whether a non-signatory is bound by or may enforce the arbitration agreement. *See In re Rubiola*, 334 S.W.3d 220, 223–24 (Tex. 2011).   Such issues are not present in this appeal.

if no agreement can be reached, an arbitrator shall be appointed by a Court of competent jurisdiction.[3]

Any doubts as to whether AmeriMex's claims against Osornia fall within the scope of the arbitration clause must be resolved in favor of arbitration. *See Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995). A court should not deny arbitration unless the court can say with positive assurance that an arbitration clause is not susceptible of an interpretation that would cover the claims at issue. *Id.* In determining whether a claim falls within the scope of an arbitration agreement, we focus on AmeriMex's factual allegations, rather than the legal claims asserted by AmeriMex. *Id.* at 900. The presumption of arbitrability is particularly applicable when the clause is broad; that is, it provides for arbitration of "any dispute arising between the parties," or "any controversy or claim arising out of or relating to the contract thereof," or "any controversy concerning the interpretation, performance or application of the contract." *See Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 230 (Tex. App.—Houston [14th Dist.] 1993, writ denied). We presume for the purposes of our analysis that the Settlement Agreement's arbitration clause is broad. In such instances, absent any express provision excluding a particular grievance from arbitration, only the most forceful evidence of purpose to exclude the claim from arbitration can prevail, and AmeriMex has the burden of showing that its claims against Osornia fall outside the scope of the arbitration clause. *See Marshall*, 909 S.W.2d at 900; *Babcock & Wilcox Co.*, 863 S.W.2d at 230. Nonetheless, the strong policy in favor of arbitration cannot serve to stretch a contractual clause beyond the scope intended by the parties or to allow modification of the unambiguous meaning of the arbitration clause. *See IKON Office Solutions, Inc.*, 2 S.W.3d at 697.

Under the unambiguous language of the arbitration clause, AmeriMex and Osornia have agreed to arbitrate all claims arising out of the Settlement Agreement. The parties did not agree to arbitrate all claims "relating to" or "connected with" the Settlement

---

[3] This clause does not contain any provision in which the parties agree that the arbitrator, rather than the courts, shall determine disputes regarding the scope of the arbitration clause. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008).

7

Agreement. Nor did the parties agree to arbitrate all claims "arising out of" or "relating to" the First Lawsuit or the occurrence giving rise to this lawsuit. Notably, Viking was not a party to the First Lawsuit or to the Settlement Agreement, and no reference is made to Viking in the Settlement Agreement. Focusing on the factual allegations in AmeriMex's live pleading, we note the following:

- AmeriMex does not refer to the First Lawsuit or to the Settlement Agreement.

- AmeriMex does not allege that Osornia breached the Settlement Agreement or any other contract.

- AmeriMex does not allege that there is any dispute over the interpretation of the Settlement Agreement.

- AmeriMex alleges tortious conduct by Becker and Osornia that allegedly occurred before the Settlement Agreement was signed in 2009.

- AmeriMex does not allege any tortious conduct that is alleged to have occurred after the Settlement Agreement was signed.

AmeriMex alleges that, after the Settlement Agreement was signed, Viking assigned its claims against Osornia to AmeriMex. As alleged assignee of Viking, AmeriMex asserts three tort claims against Osornia. Assigned tort claims based upon conduct that allegedly occurred before the Settlement Agreement was signed are simply not claims "arising out of" the Settlement Agreement. *See Washburn v. Societe Commerciale de Reassurance,* 831 F.2d 149, 150–52 (7th Cir. 1987) (holding that claims based upon allegedly tortious conduct in which defendants allegedly used various agreements and other devices to defraud various individuals did not fall within agreement to arbitrate disputes with respect to the interpretation of one of the agreements or a party's performance under that agreement); *Texaco, Inc. v. American Trading Transp. Co.*, 644 F.2d 1152, 1154 (5th Cir. 1981) (holding that tort claims based upon the defendants' alleged conduct that allegedly caused damages to plaintiff's dock did not fall within agreement by plaintiff to arbitrate all disputes "arising out of" a time charter by the plaintiff

8

of one of the vessels); *Coffman v. Provost \* Umphrey Law Firm, L.L.P.*, 161 F. Supp. 2d 720, 724–30 (E.D. Tex. 2001) (denying motion to compel arbitration and holding that claims based upon breaches of prior partnership agreements, that allegedly occurred before any arbitration clause was in effect, did not fall within clause in which plaintiff agreed to arbitrate all claims "arising under" subsequent partnership agreements). We harbor no doubts as to whether AmeriMex's claims against Osornia fall within the scope of the arbitration clause, and this court can say with positive assurance that the arbitration clause is not susceptible of an interpretation that would cover AmeriMex's claims against Osornia. *See Washburn*, 831 F.2d at 150–52; *Texaco, Inc.*, 644 F.2d at 1154; *Coffman*, 161 F. Supp. 2d at 724–30. We conclude that AmeriMex satisfied its burden of showing that its claims against Osornia fall outside the scope of the arbitration clause.

Osornia relies upon a line of cases containing language to the effect that "'if the facts alleged 'touch matters,' have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract that is subject to the arbitration agreement, the claim will be arbitrable.'" *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 195 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (quoting *Pennzoil Co. v. Arnold*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, no pet.)). Significantly, the cases in which this formulation[4] has been utilized have involved very broad arbitration clauses in which the parties agree to arbitrate all claims arising out of or relating to a contract or in which the parties agree to arbitrate all disputes that may arise among them. *See In re Prudential Securities, Inc.*, 159 S.W.3d 279, 281, 283–84 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding); *In re BP America Production Co.*, 97 S.W.3d 366, 370–71 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding); *AutoNation USA Corp.*, 105 S.W.3d at 195–96; *Arnold*, 30 S.W.3d at 498–99; *Hou-Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205–06 (Tex. App.—Houston [1st Dist.] 1997, orig. proceeding); *Fridl v.*

---

[4] Under this formulation, courts also note that "if the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract, the claim is not subject to arbitration." *See AutoNation USA Corp.*, 105 S.W.3d at 195 (quoting *Arnold*, 30 S.W.3d at 498).

*Cook*, 908 S.W.2d 507, 510–13 (Tex. App.—El Paso 1995, writ dism'd w.o.j.). Though we have presumed that the arbitration clause in the Settlement Agreement is broad, it is not as broad as the clauses involved in the cases resting upon this formulation. Therefore, this line of cases is not on point. If we followed this formulation in the case under review, we would impermissibly expand the scope of the arbitration clause beyond the plain meaning of "any and all claims arising out of this Agreement." *See IKON Office Solutions, Inc.*, 2 S.W.3d at 697.

Osornia also argues that this court cannot conclude that AmeriMex's claims are outside the scope of the arbitration clause unless this court concludes with positive assurance that the claims are not "factually intertwined" with arbitrable claims. In support of this argument, Osornia cites the following sentence from *Prudential Securities, Inc. v. Marshall*: "On this record, we cannot conclude with positive assurance that the statements at issue here are not at least 'factually intertwined' with the arbitrable claims." 909 S.W.2d 896, 900 (Tex. 1995) (per curiam). In *Marshall*, the Supreme Court of Texas held that various defamation claims asserted by two former stockbrokers against their former employer fell within the scope of arbitration agreements in which the stockbrokers agreed to arbitrate all controversies with the former employer arising out of the employment or termination of employment of the respective stockbrokers. *See id*. at 897–900. The claims based upon the alleged defamatory statements fell within the scope of the arbitration agreements without the need to rely upon a conclusion that the claims were factually intertwined with arbitrable claims. *See id*.

The better reading of the *Marshall* opinion is that it does not stand for the broad proposition that, when no other claims between the parties are being sent to arbitration, a claim that does not fall within the language of an arbitration clause still must be arbitrated unless the court can say with positive assurance that the claim is not "factually intertwined" with the arbitrable claims. *See id*. Significantly, in various cases the Supreme Court of Texas has relied upon the legal standard in *Marshall*, yet in none of them has the high court described the "factually intertwined" standard advanced by Osornia. *See, e.g.*, *In re*

10

*Rubiola*, 334 S.W.3d 220, 223–24 (Tex. 2011) (stating the legal standard from *Marshall* without mentioning the "factually intertwined" language upon which Osornia relies). In addition, this court has held that claims did not fall within the scope of an arbitration agreement without addressing whether the claims were "factually intertwined" with arbitrable claims. *See In re Igloo Prods. Corp.*, 238 S.W.3d at 581; *IKON Office Solutions, Inc.*, 2 S.W.3d at 693–97. In the context of this case, to conclude that AmeriMex's claims are outside the scope of the arbitration clause, it is unnecessary for this court to determine whether it can conclude with positive assurance that these claims are not "factually intertwined" with arbitrable claims.[5] *See In re Rubiola*, 334 S.W.3d at 223–24.

Under the applicable standard of review, we conclude that the trial court did not err in denying Osornia's application to compel arbitration.[6] Accordingly, we overrule Osornia's first issue.

**B.     Is the issue of whether the assignment is void relevant to this appeal?**

In his second issue, Osornia argues that the alleged assignment of claims by Viking to AmeriMex is void because it is contrary to public policy. Therefore, Osornia asserts, this court should sustain his second issue, reverse the trial court's order, and render a take-nothing judgment against AmeriMex on its claims against Osornia. As part of the allegations in its live pleading, AmeriMex asserts that Viking assigned its claims against Becker and Osornia to AmeriMex. To succeed on the merits, AmeriMex will have to prove this assignment, and in responding on the merits Osornia is free to assert any

---

[5]  In *Jack B. Anglin Co. v. Tipps*, the Supreme Court of Texas concluded that because the breach-of-contract claim between the parties was going to be arbitrated and because certain tort claims were factually intertwined with the breach-of-contract claim, the tort claims should be arbitrated to avoid multiple determinations of the same matter. *See* 842 S.W.2d 266, 271 (Tex. 1992). This case is not on point because this doctrine only applies when at least one claim between the parties is already going to arbitration. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 & n. 25 (Tex. 2005); *In re Prudential Securities, Inc.*, 159 S.W.3d at 281–84.

[6] Osornia also argues that AmeriMex had notice of Viking's claims against Osornia and Becker before AmeriMex signed the Settlement Agreement. Any such notice is not relevant to whether the claims that AmeriMex asserts against Osornia in the Second Lawsuit are within the scope of the arbitration clause.

11

argument he wishes, including that the assignment is void. But, the merits of AmeriMex's claims are not relevant to determining whether the trial court erred in denying Osornia's application to compel arbitration. *See AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649–50, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986); *Universal Computer Systems, Inc. v. Dealer Solutions, L.L.C.*, 183 S.W.3d 741, 749 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Accordingly, we overrule Osornia's second issue.

## V.    CONCLUSION

As Viking's assignee, AmeriMex asserts tort claims against Osornia. These claims are based upon conduct that allegedly occurred before the Settlement Agreement was signed. We harbor no doubts as to whether AmeriMex's claims against Osornia fall within the scope of the arbitration clause, and this court can say with positive assurance that the arbitration clause is not susceptible of an interpretation that would cover AmeriMex's claims against Osornia. These claims are not claims "arising out of" the Settlement Agreement. AmeriMex satisfied its burden of showing that its claims against Osornia fall outside the scope of the arbitration clause. Whether the alleged assignment is void is not an issue relevant to determining whether AmeriMex must arbitrate these claims. Accordingly, because these claims are not within the scope of the arbitration clause, AmeriMex cannot be compelled to arbitrate them.

The trial court's order is affirmed.


/s/     Kem Thompson Frost
Justice


Panel consists of Justices Frost, Seymore, and Jamison.

12