

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00271-CV

VILLA DE LEON CONDOMINIUMS,
LLC, PATTEN SALES AND
MARKETING, LLC, AND BILL
BRIDGES, JR.

APPELLANTS

V.

MICHAEL STEWART AND CARRIE
STEWART

APPELLEES

----------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 153-269987-14

----------

## CONCURRING MEMORANDUM OPINION[1]

----------

I agree with the majority opinion's conclusion that appellee Carrie Stewart

was bound to arbitrate her claims regarding the purchase of Unit 130, which fell

under the scope of the arbitration clause contained in the Contract that she

---

[1]*See* Tex. R. App. P. 47.4.

signed. However, because appellee Michael Stewart did not sign the Contract containing the arbitration clause, I believe this court must address whether the arbitration clause may be enforced against a nonsignatory. Because I believe the clause may be enforced against Michael even though he did not sign the Contract containing the arbitration clause, I concur in the judgment.

The majority opinion correctly recites that we review the trial court's denial of a motion to compel arbitration for an abuse of discretion but that we review de novo a trial court's determination regarding whether a valid agreement to arbitrate exists.[2] *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Further, we must uphold the trial court's decision if there is sufficient evidence to support the denial on any legal theory raised in the trial court because the trial court did not enter findings of fact or conclusions of law to

---

[2]The arbitration clause at issue does not specify whether the Federal Arbitration Act or the Texas General Arbitration Act applies. Appellants did not specify whether the FAA or the TGAA applied nor did they assert that the TGAA conflicts with the FAA in any material respect or that the contract affected interstate commerce. *See* 9 U.S.C.A. § 2 (West 2009) (providing FAA governs contracts relating to interstate commerce); *IKON Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 696 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding & no pet.) (holding burden is on party seeking to compel arbitration to show FAA applies). Thus, whether the TGAA or the FAA applies need not be addressed and cases decided under the FAA or the TGAA may be cited interchangeably. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 n.10 (Tex. 2008); *Zaporozhets v. Ct. Appointed Receiver in Cause No. 12-DCV-199496*, No. 14-14-00143-CV, 2014 WL 5148151, at *2 (Tex. App.—Houston [14th Dist.] Oct. 14, 2014, no pet.) (mem. op.); *Osornia v. AmeriMex Motor & Controls, Inc.*, 367 S.W.3d 707, 711 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

explain its denial of the motion to compel. *Shamrock Foods Co. v. Munn & Assocs., Ltd.*, 392 S.W.3d 839, 844 (Tex. App.—Texarkana 2013, no pet.); *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 854 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding [mand. denied]). To enforce an arbitration clause against a signatory, the party seeking to compel arbitration must establish (1) a valid arbitration agreement exists and (2) the claims asserted fall within the scope of the agreement. *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006) (orig. proceeding). With a nonsignatory, the party seeking to compel arbitration must establish that an accepted theory applies allowing the movant to bind the nonsignatory to the arbitration clause. *See In re Kellogg Brown & Root*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding); *Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 80–81 (Tex. App.—Texarkana 2014, no pet.) (op. on reh'g); *CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 895 (Tex. App.—Dallas 2007, pets. denied) (op. on reh'g). If the movant establishes that a valid arbitration agreement governs the dispute, the burden shifts to the party opposing arbitration to prove his or her defenses to arbitration. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (orig. proceeding). If the opposing party fails to do so, the trial court has no discretion and must compel arbitration. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding).

Again, the majority correctly determines that (1) as to Carrie, the Contract, letter agreement, First Addendum, and Second Addendum, viewed as a whole,

3

contained an enforceable arbitration agreement and (2) Carrie, as a signatory to each document, was bound by the enforceable arbitration clause contained in the Contract. It is important to note, however, that by pleading tort claims, Carrie cannot avoid this enforceable arbitration clause because Appellants' alleged liability arose solely from the contract or must be determined by reference to it. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131–32 (Tex. 2005) (orig. proceeding). Thus, the trial court erred by denying Appellants' motion to compel arbitration as to Carrie.

But Michael was not a signatory to the Contract containing the arbitration clause and only initialed selected portions of the Contract. Although Carrie is bound to the enforceable arbitration agreement contained in the Contract as a signatory, I cannot conclude that Michael is bound to the arbitration clause in the Contract as a nonsignatory merely because he signed subsequent agreements and addendums, none of which contained an arbitration clause. Thus, Michael may be compelled to arbitrate his claims only if no other legal basis supports the trial court's denial, i.e., only if Appellants established that the clause bound Michael to arbitrate under an established theory governing nonsignatories. Michael asserted in the trial court that he did not sign the Contract and, therefore, could not be bound by the arbitration clause. Thus, I will address whether Appellants established a theory binding Michael as a nonsignatory.[3]

---

[3]Indeed, the trial court indicated at the hearing that Michael's nonsignatory status was an important factor in the denial.

As recited previously, a party seeking to compel a nonsignatory to arbitrate his claims must establish: (1) a valid arbitration agreement exists binding the nonsignatory under an established contractual theory and (2) the claims at issue fall within the scope of the agreement. *See In re Rubiola,* 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding); *Osornia*, 367 S.W.3d at 711. The presumptions favoring arbitration do not apply to a court's determination as to whether the first showing has been made. *See Kellogg*, 166 S.W.3d at 737–38. Instead, because arbitration is contractual, a court must first decide whether an agreement was reached, applying state-law principles of contract interpretation. *In re Poly–Am., L.P.*, 262 S.W.3d 337, 347–48 (Tex. 2008) (orig. proceeding); *Am. Med. Techs., Inc. v. Miller*, 149 S.W.3d 265, 273 (Tex. App.—Houston [14th Dist.] 2004, orig. proceeding & no pet.).

Here, no one disputes on appeal that the Stewarts' claims fell within the scope of the arbitration clause. Thus, the only question is whether Appellants established that the arbitration agreement in the Contract bound Michael as a nonsignatory to arbitrate his claims related to the purchase of Unit 130. Appellants argued in the trial court that the arbitration clause was binding on Michael as a nonsignatory under the doctrine of direct-benefits estoppel because he (1) brought claims in a lawsuit seeking direct benefits from the contract containing the arbitration clause and (2) deliberately sought and obtained substantial benefits from the contract itself outside of litigation. Indeed, direct-benefits estoppel applies to "non-signatories who, during the life of the contract,

5

have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006). *See generally MaxEn Capital, LLC v. Sutherland*, No. H-08-3590, 2009 WL 936895, at *5 (S.D. Tex. Apr. 3, 2009) (collecting cases enforcing arbitration and forum-selection clauses against nonsignatories based on estoppel).

By bringing claims against Appellants directly related to the contractual purchase of Unit 130 and that necessarily must be determined by reference to the duties arising under that contract, Michael is seeking a benefit from a contract he did not sign. This is the classic scenario under which nonsignatories are held to the dictates of an arbitration clause or other type of forum-selection clause under direct-benefits estoppel. *See Carlile Bancshares, Inc. v. Armstrong*, Nos. 02-14-00014-CV, 02-14-00018-CV, 2014 WL 3891658, at *7–8 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.). Similarly, Michael obtained direct and substantial benefits from the Contract, as amended by the letter agreement and the First and Second Addendums. As Appellants argue, Michael lived in Unit 130, received a special warranty deed to Unit 130, and received a home warranty policy. By seeking a benefit from the Contract through his claims arising under the Contract and by receiving benefits under the Contract, Michael is estopped from avoiding enforcement of the arbitration clause contained in the Contract he did not sign. *See, e.g.*, *Hellenic*, 464 F.3d at 520; *Weekley Homes*, 180 S.W.3d at 131–33.

Because no legal theory supports the trial court's denial of Appellants' motion to compel arbitration as to Carrie and Michael, the trial court erred. I concur in the majority opinion's judgment reversing the trial court's denial and remanding to the trial court for further, consistent proceedings.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

DELIVERED: February 19, 2015