**Reversed and Remanded and Majority and Dissenting Opinions filed September 10, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-01066-CV

---

**JEFFERY J. SHELDON AND ANDRAS KONYA, MD, PH.D., Appellants**

**V.**

**PINTO TECHNOLOGY VENTURES, L.P., PINTO TV ANNEX FUND, L.P., PTV SCIENCES II, L.P., RIVERVEST VENTURE FUND I, L.P., RIVERVEST VENTURE FUND II, L.P., RIVERVEST VENTURE II (OHIO), L.P., BAY CITY CAPITAL FUND IV, L.P., BAY CITY CAPITAL FUND IV CO-INVESTMENT FUND, L.P., CHRIS OWENS, BILL BURKE, REESE TERRY, AND CRAIG WALKER, Appellees**

---

**On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 2013-41145**

---

# M A J O R I T Y   O P I N I O N

Two shareholders of a corporation filed suit seeking redress related to a series of transactions allegedly orchestrated by various parties. The shareholders claim the transactions diluted their respective stock interests in the corporation.

All defendants moved to dismiss the claims based on a Delaware forum-selection clause contained in certain amended and restated versions of an agreement among the corporation and various shareholders. The trial court dismissed the claims based on the Delaware forum-selection clause. On appeal, we conclude that the trial court erred in dismissing the shareholders' claims because they do not fall within the scope of the forum-selection clause. Therefore, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At all material times, appellants Jeffery J. Sheldon and Andras Konya, MD, Ph.D. (collectively the "Shareholders") owned shares of common stock in IDev Technologies, Inc. IDev and some of its shareholders entered into a shareholders agreement in 2000. This agreement was amended and restated in 2002, 2004, 2006, and 2008. The first two amended and restated agreements contain a Texas forum-selection clause, but the latter two amended and restated agreements contain a Delaware forum-selection clause. Sheldon signed all four of the amended and restated agreements; Konya signed only the first two.

Sheldon alleges that, as of early 2010, he owned just over 5% of the total outstanding shares of IDev. Konya alleges that, as of early 2010, he owned about 2.4% of the company's total outstanding shares. The Shareholders allege that as a result of various actions taken in 2010, their holdings in IDev diluted to the point that the holdings were "essentially eliminated." In 2013, a company announced that it had entered into an agreement under which it would acquire all outstanding equity of IDev for $310 million net of cash and debt.

Following the announcement, the Shareholders filed suit against various venture-capital shareholders in IDev, two individuals who were IDev officers at the time of the allegedly actionable conduct, and two individuals who were IDev

2

directors at the time of the allegedly actionable conduct (collectively the "IDev Parties"). The Shareholders asserted various claims in which they complain of actions allegedly taken by the IDev Parties in 2010 that allegedly diluted the Shareholders' IDev holdings.

The IDev Parties moved to dismiss the Shareholders' claims based on the Delaware forum-selection clause contained in each of the post-2004 amended and restated agreements. In response, the Shareholders argued, among other things, that their claims do not fall within the scope of the Delaware forum-selection clause. The trial court granted the IDev Parties' motions and dismissed the Shareholders' claims based on the Delaware forum-selection clause.

## II.    ISSUES PRESENTED

On appeal, the Shareholders present three issues:

(1) whether Konya can be bound to a Delaware forum-selection clause contained in shareholders agreements he did not sign and which expressly provide they are effective as to a party only upon signing by that party;

(2) whether appellees Bill Burke and Chris Owens can take advantage of a Delaware forum-selection clause contained in amended shareholders agreements they have not executed, which expressly provide the agreements are effective as to a party only upon signing by that party; and

(3) whether the Shareholders' claims stemming from duties owed to the Shareholders at common law or by statute "arise out of" the shareholders agreements such that the Shareholders' claims should be subject to the Delaware forum-selection clause.

## III.    STANDARD OF REVIEW

A motion to dismiss is the proper procedural mechanism for enforcing a forum-selection clause that a party to the agreement has violated by filing suit. *See*

*In re AIU Ins. Co.*, 148 S.W.3d 109, 111–21 (Tex. 2004); *Deep Water Slender Wells, Ltd. v. Shell Int'l Exploration & Prod., Inc.*, 234 S.W.3d 679, 687 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). We review the trial court's granting of such a motion for an abuse of discretion. *See Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 687. But, to the extent that our review involves the construction or interpretation of an unambiguous contract, the standard of review is de novo. *See id.*

## IV. ANALYSIS

The amended and restated shareholders agreements dated 2006, 2008, and 2010 each contain a forum-selection clause stating that "the Delaware state courts of Wilmington, Delaware (or, if there is exclusive federal jurisdiction, the United States District Court for the District of Delaware) shall have exclusive jurisdiction and venue over any dispute arising out of this Agreement."[1] Under the unambiguous language of the clause, the parties bound agree that "any dispute arising out of this Agreement" shall be resolved in certain courts in Delaware. *See id.* The provision is a mandatory forum-selection clause. *See id.*

In deciding whether to enforce a mandatory forum-selection clause, courts must determine whether the claims in the case at hand fall within the scope of the forum-selection clause and whether the court should enforce the clause. *See id.* In addition to resolving issues of scope and enforceability, courts also may have to decide issues as to whether nonsignatories to the contract containing the clause can enforce the clause or issues as to whether such nonsignatories are bound by the

---

[1] These amended and restated shareholders agreements also contain a Delaware choice-of-law clause. Nonetheless, the determination as to whether claims in Texas courts should be dismissed based on a forum-selection clause is a matter governed by Texas law, even if the merits of the claims in question are governed by the law of another jurisdiction. *See In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 n.2 (Tex. 2010).

clause. *See id*. The Shareholders assert that their claims do not fall within the scope of the forum-selection clause. The Shareholders also assert that nonsignatory Konya is not bound by the forum-selection clause and that non-signatories Burke and Owens cannot enforce the clause. The Shareholders have not challenged the enforceability of the forum-selection clause. *See id*. at 692–93.

## A.     Applicable Law and Summary of Claims

In determining whether the Shareholders' claims fall within the scope of the forum-selection clause, we consider the language of the clause and the nature of the claims that are allegedly subject to it. *See id*. at 687–88. In the clause at issue in today's case, the parties bound thereby agree that certain courts in Delaware "shall have exclusive jurisdiction and venue over any dispute arising out of this Agreement." As many courts have recognized, such "arising out of" language covers a significantly smaller category of disputes than broader phrases—such as "any dispute related to this Agreement"—that parties sometimes choose to employ in drafting forum-selection and arbitration clauses. *E.g., Osornia v. AmeriMex Motor & Controls, Inc*., 367 S.W.3d 707, 712–14 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 898 (Tex. App.—Austin 2006, orig. proceeding). In *In re Lisa Laser USA, Inc*., the parties to an agreement agreed that certain courts in California would have "exclusive jurisdiction and venue over any dispute arising out of this agreement." 310 S.W.3d 880, 882 (Tex. 2010). The Supreme Court of Texas concluded that claims by one of the contracting parties for breach of the agreement and for tortious interference with contract arose out of the agreement. In reaching this conclusion, the high court gave precise instruction,  stating as follows:

> [The plaintiff's] claims arise out of the Agreement rather than other general obligations imposed by law. **That is**, but for the Agreement, [the

plaintiff] would have no basis to complain that [one of the defendants] failed to offer the right of first refusal to [the plaintiff] to distribute new products, failed to provide [the plaintiff] information about new products, allowed other distributors to sell products for which [the plaintiff] was supposed to be the exclusive distributor, and wrongfully terminated the contract. *See In re Int'l Profit Assocs. I,* 274 S.W.3d at 678. Accordingly, the trial court erred in refusing to enforce the clause in the Texas lawsuit.

*In re Lisa Laser USA, Inc.*, 310 S.W.3d at 886 (emphasis added).[2]

In the Shareholders' live pleading, they assert claims for minority-shareholder oppression, common-law fraud, violations of the Texas Securities Act, and breach of fiduciary duty[3] based on the following allegations, summarized in the remaining paragraphs in this Section IV. A.:[4]

Sheldon acquired substantial common shares of IDev and a more modest holding of preferred shares such that his total company holdings amounted to just over 5% of the total outstanding shares of IDev as of early 2010. Konya received 650,000 shares of IDev common stock in early 2001. Konya's holdings amounted to about 2.4% of the total outstanding shares of IDev as of early 2010.

---

[2] Citing *Texas Source Group, Inc. v. CCH, Inc.*, the IDev Parties assert that a federal district court has held that claims arose from the agreement containing a forum-selection clause because the claims required an evaluation of the rights contained in the agreement. *See* 967 F. Supp. 234, 237–38 (S.D. Tex. 1997). Presuming that the court in that case so held, this holding would be under federal law rather than Texas law and would conflict with the Supreme Court of Texas's opinion in *Lisa Laser*, which we are bound to apply. *See Alliance Health Group, LLC v. Bridging Health Alliance Health Group, LLC*, 553 F.3d 397, 399 (5th Cir. 2008) (concluding that federal law applies to the determination of whether a forum-selection clause should be enforced as to claims in federal court); *In re Lisa Laser USA, Inc.*, 310 S.W.3d at 886.

[3] The Shareholders also asserted vicarious liability theories of conspiracy and inducement of others to breach their fiduciary duties.

[4] We need not and do not address the merits of any of these allegations; instead, we examine them to determine the nature and substance of the Shareholders' claims so that we may determine whether these claims fall within the forum-selection clause. *See Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 695–96 (concluding that courts do not determine the merits of claims in determining whether the claims must be litigated elsewhere under a forum-selection clause).

Each of the corporate defendants holds itself out as a venture-capital fund (collectively the "Venture Capital Stockholders"). By 2010, the Venture Capital Stockholders had acquired substantial holdings of IDev preferred stock and collectively controlled over 60% of the IDev issued and outstanding stock. The preferred stock was convertible to IDev common stock under certain circumstances. Through rights acquired in connection with their investments, the Venture Capital Stockholders directly determined who held four of the six seats on the IDev board of directors. These four controlled directors, in turn, determined the other two directors. These two so-called independent board slots were filled by defendants Reese Terry and Craig Walker as of and after 2010.

IDev hired defendant Owens as Chief Executive Officer in late 2009. IDev hired defendant Burke as Chief Financial Officer in late 2009. Both were offered rights to shares of IDev common stock along with their employment, but the company did not have sufficient authorized shares at the time of employment to deliver to them. Through the events made the subject of this suit, the company essentially eliminated the approximate 5% holdings of Sheldon, the 2.4% holdings of Konya and the holdings of other IDev common stock holders and delivered options for approximately 5% of the company's shares to Owens and 1.5% of the company's shares to Burke.

Before 2010, major company shareholders, including Sheldon, Konya, and the Venture Capital Stockholders, had entered into a shareholders agreement. The shareholders agreement in effect before the events made the subject of this suit named Sheldon a "Key Shareholder" and a "Significant Shareholder," which provided Sheldon with certain rights relating to the sale of shares of the company by other participants to the agreement and with preemptive rights to acquire newly

issued company shares to maintain the same approximate 5% holdings. Konya was identified in the shareholders agreement as a "Key Shareholder."

At some point in 2010, the IDev Parties determined to alter IDev's stock holdings, to dilute the holdings of the company's common shareholders to the point that the common stock holders were almost wiped out altogether, to permit the Venture Capital Stockholders and their select related parties to acquire newly issued preferred stock, and to deliver IDev stock to Owens and Burke. To do so, the IDev Parties set out to reduce Sheldon's holdings and Konya's holdings to a modest fraction of 1% and to similarly dilute the holdings of other existing shareholders.

Beginning mid-July 2010, the IDev Parties allegedly began the following steps to accomplish their goal:

- The Venture Capital Stockholders, without prior notice to other shareholders, caused the conversion of all preferred stock to common stock.

- The Venture Capital Stockholders, without prior notice to other shareholders, caused the reverse stock split of all common stock to reduce the number of common stock shares by a 100 to 1 factor.

- The Venture Capital Stockholders, without prior notice to other shareholders, caused the board of directors to join with them to amend the shareholders agreement, eliminating Sheldon and other similarly situated shareholders as "Significant Shareholders" with preemptive rights.

- The two disinterested "independent" directors, Terry and Walker, breached their fiduciary duties by voting to approve the various parts of these transactions, including the amendment of the shareholders agreement.

- The IDev board of directors authorized Owens and Burke to disseminate various communications and execute various documents as part of the series of transactions in breach of their fiduciary duties and in conspiracy with the other IDev Parties.

8

- The IDev Parties offered new preferred stock primarily to other prior preferred stock holders in a manner that significantly diluted the holdings of prior common stockholders and enhanced the percentage holdings of prior preferred stockholders.

- The IDev Parties caused the shareholders agreement to be amended in hopes of avoiding Sheldon's (and others') preemptive rights in respect of their common and preferred stock holdings.

- As part of the communications to Sheldon and others similarly situated, the IDev Parties made various false representations and misleadingly failed to disclose certain information.

According to the Shareholders, once the IDev Parties essentially eliminated the holdings of those shareholders they elected to not favor, the IDev Parties continued the company operations. In July 2013, a company announced that it had entered into an agreement to purchase IDev for $310 million net of cash and debt. The company was to acquire all outstanding equity of IDev. According to the company's press release, the sale was slated to close by the end of 2013. Sheldon's more than 5% holdings should have resulted in several millions of dollars, but if Sheldon is paid only for his holdings after they were manipulated, diluted, and devalued by the transactions described above, Sheldon would be lucky to receive $20,000. Konya's 2.4% holdings should result in over one million dollars, but if he is paid only for his holdings after they were manipulated, diluted, and devalued by the transactions described above, Konya would be lucky to receive $10,000. The actions of the IDev Parties caused this loss.

**B.      Did the trial court err in determining that the Shareholders' claims fall within the scope of the forum-selection clause?**

Considering these allegations as a whole, we note that the Shareholders do not assert any claims for breach of the shareholders agreement or any other

agreement. No potentially applicable version of the shareholders agreement purports to give Konya any preemptive rights or other anti-dilution protection. As a Significant Shareholder, Sheldon did have preemptive rights under the 2008 Shareholders Agreement. Nonetheless, in this lawsuit, Sheldon does not seek to enforce these preemptive rights, nor does he assert that the IDev Parties violated them.[5] The Shareholders assert an assortment of non-contractual claims, including minority-shareholder oppression, common-law fraud, violations of the Texas Securities Act, breach of fiduciary duties, conspiracy, and inducement of others to breach their fiduciary duties. All of these allegations are based on a series of actions that the IDev Parties allegedly took in 2010 that allegedly had a substantial dilution effect on the Shareholders' IDev holdings. One of these alleged actions was to amend the 2008 Shareholders Agreement to eliminate Sheldon's preemptive rights. Yet, all of the purported obligations that the IDev Parties allegedly breached arise either under statute or common law. A common-sense examination of the substance of the Shareholders' claims shows that general legal obligations, rather than any of the shareholders agreements, establish the alleged duties that the

---

[5] The IDev Parties assert that the shareholders agreements and the preemptive rights that they provide are central to the Shareholders' claims because they provide the only mechanism available to protect the Shareholders against dilution of their holdings. The IDev Parties' positions as to the merits of the Shareholders' claims and the law applicable to them are likely different from the Shareholders' positions as to these matters. Nonetheless, the merits of these claims and the interpretation of the law applicable to them are subjects not before this court. We must determine the nature of the claims the Shareholders have asserted, and they have not asserted any claims for breach of the shareholders agreements or for violation of any preemptive rights under these agreements. The IDev Parties argue that the only means by which the Shareholders may recover based on the dilution of their IDev holdings is by enforcing alleged preemptive rights under the shareholders agreements. If the IDev Parties are correct, then the Shareholders' claims will fail on the merits. But, the alleged lack of merit of the Shareholders' claims is not a basis for this court to ignore the nature and substance of the claims the Shareholders have pleaded in determining whether these claims are within the scope of the forum-selection clause.

10

IDev Parties purportedly breached.[6]

Under the Shareholders' allegations, even if there had been no shareholders agreements, the Shareholders still would be able to assert all of their claims. Thus, the agreements with a Delaware forum-selection clause and the plaintiffs' claims lack the "but for" relationship upon which the Supreme Court of Texas relied in *Lisa Laser*.[7] *See In re Lisa Laser USA, Inc.*, 310 S.W.3d at 886.

A basic principle of American jurisprudence is that "the party who brings a suit is master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). Thus, Sheldon and Konya—not the IDev Parties or any court—each get to decide the claims to assert against the IDev Parties and to identify the legal obligations on which these claims are based. As master of his claims, Konya could have sought to recover based on the IDev Parties' alleged breaches of the shareholders

---

[6] The Shareholders have cited a Delaware case in which the court concluded that the shareholders/plaintiffs had stated non-derivative claims upon which relief might be granted against venture-capital shareholders and members of the board of directors based on allegations of breach of fiduciary duty and aiding and abetting of breach of fiduciary duty. *See Carsanaro v. Bloodhound Techs., Inc.*, 65 A.3d 618, 639, 642–43, 659 (Del. Ch. 2013). No mention is made of any shareholders agreement. *See id.* at 627–66. This opinion simply illustrates that, as the Shareholders have done in their pleading, it is possible to assert claims based on dilutive corporate transactions without relying on rights created under any shareholders agreement. In citing the *Carsanaro* case, we make no comment on the merits of the Shareholders' claims, nor do we address the merits of any of the legal issues discussed in that opinion.

[7] In *In re Fisher*, the Supreme Court of Texas determined whether the action in that case was "an action arising from a major transaction" within the meaning of Civil Practice and Remedies Code section 15.020(c). *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.020(c) (West, Westlaw through 2013 3d C.S.); *In re Fisher*, 433 S.W.3d 523, 529–31 (Tex. 2014). In this statutory language, "arising from" modifies "major transaction" rather than any agreement. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.020(c). Nonetheless, the high court cited several forum-selection clause cases, including the *Lisa Laser* case, and stated that the court similarly would undertake a common-sense examination of the substance of the claims. *See In re Fisher*, 433 S.W.3d at 529–31. In doing so, the *Fisher* court reiterated that the claims in *Lisa Laser* arose out of the agreement because the defendants' alleged obligations would not have existed but for the agreement and were not imposed under general law. *See id.* at 530–31.

11

agreement. This decision would have been curious because no potentially applicable version of the shareholders agreement purports to give Konya any preemptive rights or other anti-dilution protection. Konya chose not to rely upon the shareholders agreement as a source of the legal obligations upon which he bases his claims against the IDev Parties. As a Significant Shareholder, Sheldon did have preemptive rights under the 2008 Shareholders Agreement. Sheldon could have asserted a claim for breach of that shareholders agreement or he could have relied upon the shareholders agreement as a source of the legal duties upon which he bases his claims against the IDev Parties. Nonetheless, as master of his claims, Sheldon chose not to take either action.

We should not ignore what is, based on what might have been. *See Air Routing Int'l Corp. (Canada) v. Britannia,* 150 S.W.3d 682, 700 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Though the Shareholders might have based their claims in whole or in part on the breach of obligations under the shareholders agreement, they did not do so. The claims that the Shareholders actually have asserted are based on violations of general obligations allegedly imposed either by statute or by the common law,[8] and the bases for these claims would exist even if there never had been an agreement between or among any of the shareholders.[9] If, in the future, the Shareholders were to assert claims based on the breach of obligations under the shareholders agreement, the IDev Parties would have the right to file a motion to dismiss to enforce the Delaware forum-selection clause based on these claims. Yet, even though the Shareholders might have claims

---

[8] Our dissenting colleague suggests that we should not rely on whether the Shareholders' claims arise out of non-contractual general obligations imposed by law. *See post*, at 2. But, the parties' chosen contractual language and the analysis of the *Lisa Laser* case require that we do so. *See In re Lisa Laser USA, Inc.*, 310 S.W.3d at 886.

[9] Our dissenting colleague asserts that our analysis is based only on the labels of the Shareholders' claims rather than the substance of these claims. *See post*, at 2. We base our analysis on the nature and substance of the claims rather than any label.

arising out of the shareholders agreement that they could have asserted, the fact remains that they have not asserted these claims. If, under applicable law, the claims a plaintiff asserts are not within the scope of a forum-selection clause, the existence of unasserted claims that are within the scope of this clause does not cause the asserted claims to fall within the scope of the clause. *See Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 687–88 (stating that in determining whether the Shareholders' claims fall within the scope of the forum-selection clause, we consider the language of the clause and the nature of the asserted claims that are allegedly subject to the clause).

We recognize the line of cases construing and applying broadly written arbitration clauses in which courts effectively state that "'if the facts alleged 'touch matters,' have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract that is subject to the arbitration agreement, the claim will be arbitrable.'" *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 195 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (quoting *Pennzoil Co. v. Arnold*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, no pet.)) (interpreting arbitration clause covering "claim[s] arising out of or relating to" agreement). This line of cases does not apply for two reasons. First, the *Lisa Laser* court did not apply this analysis.[10] *See In re Lisa Laser USA, Inc.*, 310

---

[10] Our dissenting colleague relies upon *In re Weekley Homes, L.P. See* 180 S.W.3d 127, 135 (Tex. 2005) (orig. proceeding). But, that case involved a very broad arbitration clause rather than one limited to "all claims arising out of this agreement." *See id.* at 129. Our colleague also relies on *In re International Profit Associates, Inc.* 274 S.W.3d 672, 677 (Tex. 2009) (orig. proceeding) (per curiam). That case addressed a forum-selection clause lacking any express requirement of a relationship between the claims and the agreement, and the parties in that case had "no relationship . . . apart from the contracts." *Id.* at 674, 677, 678. In addition, the "direct benefit" standard cited in *International Profit Associates* was used in *Weekley Homes* to determine whether a nonparty should be bound by an arbitration clause, which is not one of the issues we address in this opinion. *See id.* at 677 (citing *In re Weekley Homes, L.P.*, 180 S.W.3d at 131–32; *In re Weekley Homes, L.P.*, 180 S.W.3d at 131–32 .

13

S.W.3d at 886. Second, this court previously has held that this line of cases does not apply to a narrower clause requiring arbitration of "all claims arising out of this Agreement." *Osornia*, 367 S.W.3d at 712, 713–14. Applying this line of cases would not honor the language the parties chose to include in their agreements. *See id*.

The Shareholders' claims all arise out of alleged non-contractual, general obligations imposed by law rather than out of the shareholders agreement.[11] Under the Shareholders' live pleading, even if there had been no shareholders agreement, the Shareholders still have all the same bases to complain of the IDev Parties' allegedly wrongful conduct in 2010.[12] So, under the binding precedent in *Lisa Laser*, the Shareholders' claims do not arise out of the shareholders agreement and do not fall within the scope of the Delaware forum-selection clause.[13]

---

[11] Our dissenting colleague asserts that the Shareholders' damages would be calculated by comparing "their holdings under the 2008 Agreement and the 2010 Agreement." *Post*, at 4. She also states that, but for the shareholders agreement, there would be no relationship between the parties and no claims by the Shareholders. *See id*., at 5. In various parts of the dissenting opinion, our colleague appears to be treating the shareholders agreement as if it were IDev's corporate charter. The shareholders agreement is a contract among IDev and some of its shareholders. None of the parties to the shareholders agreement were obligated to enter into it by applicable corporate law. The shareholders agreement is not IDev's certificate of incorporation, IDev's bylaws, or the Delaware General Corporation Law. Thus, the Shareholders do not hold or own IDev stock under the shareholders agreement. Even if there had not been a shareholders agreement, there would be a relationship among the parties because they still would have been owners of IDev stock. And, the Shareholders' claims based on general legal obligations are not claims based on the shareholders agreement.

[12] Our dissenting colleague cites a recent case from the Supreme Court of Texas for the proposition that there is no limiting principle for the causative chain in a "but for" requirement. *See post*, at 3 (citing *Plains Exploration & Prod. Co. v. Torch Energy Advisors Inc.*, No. 13-0597, — S.W.3d —, —, 2015 WL 3653330, at *10 (Tex. June 12, 2015)). But, the lack of a principle limiting how far back a causal chain may go does not mean that an element not in the causal chain satisfies the "but for" requirement.

[13] This forum-selection clause, like that in *Lisa Laser*, does not cover all claims or disputes arising out of or relating to the shareholders agreement or the relationships between and among IDev shareholders. Our dissenting colleague states that no other court of appeals has applied the *Lisa Laser* precedent in the way it is applied in this opinion. But, the pertinent part of *Lisa Laser*

14

Accordingly, we sustain the Shareholders' third issue.[14]

## V. CONCLUSION

The Delaware forum-selection clause applies only to "any dispute arising out of" the shareholders agreement. Under binding precedent from the Supreme Court of Texas, the Shareholders' claims do not fall within the scope of the clause. Therefore, the trial court erred in dismissing these claims based on the clause. We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

/s/ Kem Thompson Frost
 Chief Justice

Panel consists of Chief Justice Frost and Justices Christopher and Busby. (Christopher, J., dissenting).

---

involved the application of a forum-selection clause covering all disputes "arising out of this Agreement," and the case under review appears to be the first case involving such a clause to have been decided after *Lisa Laser*. No other court has had occasion to address the issue.

[14] Because we sustain the third issue, we need not and do not address the Shareholders' first and second issues.